IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

KENNETH L. DAVIS and ELLEN O. *
DAVIS, individually and on
behalf of a class of all *
persons similarly situated,
                                        *
        Plaintiffs,                          CASE NO. 4:11-CV-95 (CDL)
                                        *
vs.
                                        *
GMAC MORTGAGE LLC,
                                        *
        Defendant.
                                        *
_____

O R D E R

        Plaintiffs Kenneth and Ellen Davis ("Plaintiffs") seek the

remand of this state law breach of contract action arguing that

no basis exists for federal jurisdiction.   Defendant GMAC

Mortgage LLC ("Defendant") responds that Plaintiffs' claims

involve substantial questions of federal law, and therefore,

jurisdiction is proper in this Court.   For the following

reasons, the Court finds that Plaintiffs' claims raise

substantial questions of federal law and that the Court has

jurisdiction to consider those claims.   Accordingly, Plaintiffs'

Motion to Remand (ECF No. 7) is denied.

MOTION TO REMAND STANDARD

        "A removing defendant bears the burden of proving proper

federal jurisdiction." *Adventure Outdoors, Inc. v. Bloomberg*,

552 F.3d 1290, 1294 (11th Cir. 2008) (internal quotation marks

omitted).    "Any   doubts   about   the   propriety   of   federal jurisdiction   should   be   resolved   in   favor   of   remand   to   state court."   *Id.*   "In determining whether jurisdiction exists under 28   U.S.C.   §   1331,   a   court   must   look   to   the   well-pleaded complaint   alone.    Thus,   to   meet   [its]   burden,   the   defendant[] must   show   that   the   plaintiffs'   complaint,   as   it   existed   at   the time   of   removal,   provides   an   adequate   basis   for   the   exercise   of federal   jurisdiction."    *Id.*   at   1295   (citation   omitted).    A plaintiff,   however,   "may   not   defeat   removal   by   omitting   to   plead necessary   federal   questions   in   a   complaint."   *Franchise   Tax   Bd. of   State   of   Cal.   v.   Constr.   Laborers   Vacation   Trust   for   S.   Cal.*, 463 U.S. 1, 22 (1983).

BACKGROUND

Plaintiffs   originally   filed   this   action   in   state   court   as   a putative   class   action   for   breach   of   their   refinance   mortgage loan   (and   similar   breaches   of   the   loans   of   putative   class members),   which   loans   were   guaranteed   by   the   United   States Department   of   Veterans'   Affairs   ("VA").    Plaintiffs   allege   that Defendant   breached   their   refinance   loan   by   charging   Plaintiffs settlement   or   attorney   fees,   which   fees   are   prohibited   under   the VA   regulations   applicable   to   such   loans   and   which   regulations were   incorporated   into   the   Plaintiffs'   loan   agreement. Defendant   removed   the   action   to   this   Court,   asserting   that   the Court   has   federal-question   jurisdiction   under   28   U.S.C.   §   1331

because the resolution of the action turns on a substantial federal question—the interpretation of the federal VA regulations.   Plaintiffs seek remand of this action to state court, arguing that the resolution of Plaintiffs' claims do not involve substantial federal questions.

Plaintiffs' Complaint contains the following allegations. Defendant originates and funds loans to U.S. military veterans, including refinance loans, which are guaranteed by the VA ("VA refinance loans").   Notice of Removal Ex. 1-1, Class Action Compl. ¶ 5, ECF No. 1-2 [hereinafter Compl.].   Plaintiffs entered into a contract with Defendant for a VA refinance loan, and their home served as collateral for the loan.   *Id*. ¶¶ 1, 25. When closing a VA refinance loan, Defendant and/or its loan closers charge various fees.   *Id*. ¶ 6.   Settlement or attorney fees cannot be charged to the borrower for a VA refinance loan, except for certain closing charges, which are not applicable here.   *Id*. ¶ 9 & n.1.   Defendant charged Plaintiffs impermissible settlement or attorney fees when closing their VA refinance loan by "bundling" attorney fees with other charges, instead of properly disclosing the fees.   *E.g., id*. ¶ 16.

Plaintiffs make the following allegations regarding how Defendant improperly "bundled" the attorney fees with other permissible charges.   According to the Complaint, closing attorney fees must be listed on either line 1101 or line 1107 of

the HUD-1 form that is filled out with a VA refinance loan, because the attorney fees listed on lines 1101 or 1107 cannot be imposed on the borrower.  *Id.* ¶¶ 10-11.  Although fees for title searches and title examinations may be charged to the borrower, those charges must be listed on lines 1102 and 1103 of the HUD-1 form and can only include actual charges for title searches or title examinations.  *Id.* ¶¶ 12-14.  Defendant discloses attorney fees on lines 1101 or 1107 in connection with other types of loans, but Defendant's loan closers did not properly disclose attorney fees in connection with Plaintiffs' VA refinance loan on lines 1101 or 1107.  *Id.* ¶¶ 15-16.  Instead, Defendant bundled attorney fees with the title search and title examination charges on lines 1102 or 1103 so the charges could be imposed on the borrower.  *Id.* ¶¶ 16, 18.  The improperly charged fees were then included in the principal loan amount financed by the borrower.  *Id.* ¶ 19.

Plaintiffs' VA refinance loan provides that "[i]f the indebtedness secured hereby is guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of the Borrower and Lender."

Notice of Removal Ex. 1-3 at 3, Note 2, ECF No. 1-4 at 3; Notice of Removal Ex. 1-3 at 50, VA Loan Rider, ECF No. 1-4 at 50.[1]

Plaintiffs also allege that Defendant is required by law to certify to the VA that it has not imposed any charges or fees in excess of those permissible under 38 C.F.R. § 36.4312, and Defendant executed the required certification for Plaintiffs' VA refinance loan.[2]  Compl. ¶¶ 20-21.  Thus, Plaintiffs claim the certificate for their refinance loan was incorrect, and without a certificate, the VA should not have issued a guarantee for Plaintiffs' VA refinance loan.  *Id.* ¶¶ 22-23.

Plaintiffs assert causes of action for breach of contract and good faith and fair dealing against Defendant based on the following allegations.  Defendant and class members entered into contracts in connection with the VA refinance loans originated by Defendant.  *Id.* ¶ 25.  Plaintiffs claim Defendant breached its contractual duties to the class members by allowing its

---

[1] Although Plaintiffs did not attach their VA refinance loan to the Complaint, Plaintiffs make numerous references to the loan and it is central to their breach of contract claim.  Thus, the VA refinance loan is incorporated into the Complaint by reference.  *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings").

[2] After Plaintiffs executed their VA refinance loan, 38 C.F.R. § 36.4312 was renumbered as 38 C.F.R. § 36.4313, but the text of the provision did not change.  The Court will hereinafter refer to the regulation as 38 C.F.R. § 36.4313.

closing agents to impose improper charges in connection with originating the loans. *Id.* ¶ 26. Plaintiffs allege Defendant's breach of contract harmed class members because they were required to pay fees that could not be charged to veteran borrowers. *Id.* ¶ 27.

Plaintiffs seek certification as a class under O.C.G.A § 9-11-23. *Id.* ¶¶ 28-42. Plaintiffs claim that common questions of law and fact exist, including "[w]hether HUD-1 forms and related regulations are incorporated into contracts between GMAC Mortgage and class members" and "[w]hether it is a breach of contract, in connection with a VA refinance loan, to group charges for a settlement fee or closing attorney fee with 'title exam' or 'title search' fees." *Id.* ¶ 34(b)-(c). Plaintiffs aver that their claims are typical because "[t]he provisions of the VA regulations incorporated into the contracts, and VA HUD-1 forms are the same or substantially the same for each class member." *Id.* ¶ 35. Further, common questions of law or fact predominate because "[t]he overarching issue of whether GMAC Mortgage could properly charge certain fees, such as attorney fees, is the same for every potential class member." *Id.* ¶ 38.

DISCUSSION

Defendant argues that the Court has jurisdiction under 28 U.S.C. § 1331 because the resolution of Plaintiffs' state law

breach of contract claims turn on the interpretation of a federal regulation promulgated to implement a complex federal regulatory scheme. Plaintiffs contend that although resolving an issue of federal law is essential to Plaintiffs' breach of contract claims, the federal question to be decided is not sufficiently substantial to support the Court's exercise of federal jurisdiction.[3]

Removal is proper under 28 U.S.C. § 1441 for actions over which the Court has original jurisdiction. 28 U.S.C. § 1441(a). "[D]istrict courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal-question jurisdiction under 28 U.S.C. § 1331 "is invoked by and large by plaintiffs pleading a cause of action created by federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "There is, however, another longstanding, if

---

[3] The Court notes that Plaintiffs also bring claims against Defendant for breach of the implied duty of good faith and fair dealing inherent in contracts under Georgia law. *See Martin v. Hamilton State Bank*, No. A11A1588, 2012 WL 593104, at *1 (Ga. App. Feb. 24, 2012) ("Generally speaking, every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.") (internal quotation marks omitted). The parties' briefs focus on the presence of a federal question with respect to Plaintiffs' breach of contract claims, and the Court will focus its analysis on the breach of contract claims as well. As explained below, the Court finds a substantial federal question exists with respect to Plaintiffs' breach of contract claims, and the Court has supplemental jurisdiction over Plaintiffs' claims for breach of the implied duty of good faith and fair dealing to the extent that any such claims are separate from the breach of contract claims. 28 U.S.C. § 1367(a).

less frequently encountered, variety of federal 'arising under' jurisdiction, [the Supreme Court] having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Id.* Defendant contends a substantial federal-question exists here, and thus the Court will analyze whether this action "fit[s] within the special and small category" of substantial federal-question cases. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

The Supreme Court in *Grable* explained that in certain circumstances "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. In *Grable*, the Supreme Court determined that a substantial federal question existed because the plaintiff's state law quiet title claim turned entirely on whether he received adequate notice under the Internal Revenue Code of the Internal Revenue Service's seizure of his property. *Id.* at 314. According to the Supreme Court, rather than stating a "single, precise, all-embracing test" to determine whether a substantial federal question exists, "the question is, does the state-law claim necessarily raise a stated federal issue, actually disputed and

substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* (internal quotation marks omitted).

## I.   Does the State-Law Claim Necessarily Raise a Disputed Federal Issue?

First, the Court must determine whether Plaintiffs' claims necessarily raise a federal issue.   Plaintiffs' breach of contract claim alleges Defendant imposed improper charges in connection with originating their loans and thus breached its contractual duties to Plaintiffs.   The source of the contractual obligation that was allegedly breached is the federal regulation applicable to refinance loans guaranteed by the VA, which regulation was specifically incorporated into the contract in question.   The applicable regulation, 38 C.F.R. § 36.4313, limits the fees that may be charged to the "borrower incident to the making of a guaranteed or insured loan" to "those expressly permitted under paragraph (d) or (e) of this section." 38 C.F.R. § 36.4313(a).   Paragraph (d) lists "title examination" fees as permissible charges, 38 C.F.R. § 36.4313(d)(1)(vii), but neither paragraphs (d) or (e) expressly list attorney or settlement fees as permissible charges, *see* 38 C.F.R. § 36.4313(d)-(e).   Defendant argues that Plaintiffs' claims necessarily raises a federal issue because Plaintiffs

allege Defendant breached the contracts by improperly "bundling" attorney fees with title examination or title search fees in violation of 38 C.F.R. § 36.4313.    The Court agrees. Adjudicating Plaintiffs' breach of contract claims requires a determination of whether bundling attorney or settlement fees with title search or title examination fees violates 38 C.F.R. § 36.4313.    The Court observes that Plaintiffs concede that "[f]or the purposes of this motion to remand, it may be assumed that resolution of an issue of federal law is essential to Plaintiffs' state law breach of contract claim."    Br. in Supp. of Pls.' Mot. to Remand 3, ECF No. 7-1.    The Court finds Plaintiffs' claims necessarily raise a federal issue.

The Court further finds that this issue is disputed. Plaintiffs allege that Defendant cannot bundle attorney fees with title search or title examination charges, whereas Defendant argues that nothing in 38 C.F.R. § 36.4313 suggests that attorney fees may not be charged in connection with title examinations or title searches.    The Court concludes that Plaintiffs' breach of contract claims necessarily raise a disputed issue of federal law.

## II.  Is the Federal Issue a Substantial One?

Federal jurisdiction, however, "demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to

be inherent in a federal forum." *Grable*, 545 U.S. at 313.  To determine whether the nature of the dispute between the parties meets *Grable's* substantiality requirement, the Court considers a variety of factors that have been outlined by the Eleventh Circuit in *Adventure Outdoors, Inc. v. Bloomberg,* 552 F.3d 1290 (11th Cir. 2008)*.*  In *Adventure Outdoors, Inc.,* the Eleventh Circuit found no substantial federal question where (1) there was no dispute over the meaning of the federal law at issue, *id.* at 1299; (2) the meaning of the federal law at issue was clear, *id.* at 1300; (3) state application of the federal law did not pose a serious threat to the federal interest of uniformity and consistency of federal law, *id.*; and (4) the federal legal issue was not dispositive of the case because factual issues remained no matter how the legal issue was resolved, *id.* at 1301.

As previously noted, the parties here dispute the meaning of 38 C.F.R. § 36.4313.  Moreover, the resolution of Plaintiffs' breach of contract claims will depend primarily on a legal interpretation of the meaning of a federal regulation rather than the simple application of that federal regulation to disputed facts.  Resolution of the federal issue is potentially dispositive of the case.  If the regulation permits the bundling of attorney fees as a matter of regulatory interpretation, then Defendant should prevail.  In other words, a legal interpretation of the meaning of the federal regulation could be

dispositive of Plaintiffs' claims.   The fact that a dispute exists over the meaning of a federal regulation that may be dispositive of Plaintiffs' claims weighs in favor of finding a substantial federal question.[4]

In determining whether the disputed federal issue is a substantial one, the Court considers whether the meaning of the federal law is unclear such that the dispute over its meaning is genuine.   *Adventure Outdoors, Inc.*, 552 F.3d at 1300.   The Court observes that the parties have not pointed the Court to any federal authority deciding whether settlement or attorney fees can be assessed under 38 C.F.R. § 36.4313 by including them as title search or title examination fees.   Given this lack of precedent and the parties' conflicting interpretations of the regulations, the Court finds the law to be sufficiently unclear

---

[4] The Court acknowledges that if the Court determines that attorney fees cannot be bundled with title examination or title search fees, Defendant is free to argue as a factual matter that it did not bundle attorney fees with title examination or title search fees.   As a result, the resolution of the federal issue is not necessarily dispositive of the case.   The resolution of the federal issue is still potentially dispositive of the case, however, and the Court finds this creates a more substantial federal question than the federal issue in *Adventure Outdoors*, where factual issues remained no matter how the federal issue was resolved.   *Cf. Adventure Outdoors, Inc.*, 552 F.3d at 1301 (noting the federal issue did not dispose of the case because if the trial court ruled "that participation in simulated straw purchases is illegal, the plaintiffs are free to argue, as a factual matter, that they believed the female investigator posing as a straw purchaser was the actual purchaser of the firearm," and if the trial court decided "that federal law does not prohibit participation in simulated straw purchases, the plaintiffs must still show, among other things, that the defendants' statements were not privileged.").

for purposes of determining whether a substantial federal question exists.

The Court must also consider "[t]he importance of the government's interest in the disputed federal . . . provision and the ability of a federal agency to vindicate its action in federal court." *Adventure Outdoors, Inc.*, 552 F.3d at 1300. The Court finds that significant federal interests are implicated in this action. The applicable regulation is an integral part of the federal regulatory scheme for VA guaranteed loans. Moreover, the transaction from which Plaintiffs' claims arise would not have occurred except for the existence of the VA guaranteed loan program that was subject to the VA regulatory scheme that included the regulation in question. *See Bender v. Jordan*, 623 F.3d 1128, 1130 (D.C. Cir. 2010) ("Although breach of contract is a state law cause of action, the agreements themselves are 'creatures of federal law' in the sense of being intended to implement the scheme designed by the [federal regulations].") (citation omitted). It is clear that even in the absence of language in the loan documents expressly incorporating the VA regulations, those regulations would nevertheless apply. *See* 38 U.S.C. § 3703(c)(1) ("Loans guaranteed or insured under this chapter shall be payable upon such terms and conditions as may be agreed upon by the parties thereto, subject to the provisions of this chapter and

regulations of the Secretary issued pursuant to this chapter"); *see also Bender*, 623 F.3d at 1130-31 (noting the parties "entered into the agreements because federal law requires the execution of such contracts before legal fees can be advanced to defendant officers and directors."). Therefore, this case is distinguishable from those cases where non-mandatory statutory language is simply substituted into a contract as a contract term.

Finally, the VA has a direct financial stake in the particular contracts at issue in this action. Because the VA has guaranteed the loans, the VA has an interest in the parties fulfilling their contractual obligations to comply with the federal regulations governing the loans. Plaintiffs allege that the attorney or settlement fees were included in the principal loan amounts financed to the borrowers, Compl. ¶ 19, and therefore the VA has potentially guaranteed loans that include higher charges than permitted by the VA regulations. The VA has an important interest in the consistent interpretation of the federal regulation limiting the fees charged to borrowers that are ultimately included in the principal loan amount that it guarantees.[5]

---

[5]  The VA's interest in the proper interpretation of the federal regulation with respect to the contracts at issue also distinguishes this action from the authority relied on by Plaintiffs in their motion to remand.  In both *Columbus Bank & Trust Co. v. CompuCredit Corp.*, No. 4:08-CV-78 (CDL), 2008 WL 4098950 (M.D. Ga. Sept. 3, 2008) and

Moreover, although nothing would prevent the Secretary of Veterans Affairs from instituting administrative proceedings against GMAC or even bringing an action on behalf of the Government under the False Claims Act, there is a legitimate concern about the possible inconsistent interpretations of the regulation with respect to the same VA refinance loans.[6]  For example, if the Court remands Plaintiffs' claims to state court and the Secretary brings a claim in federal court under the False Claims Act, the state court could determine that the regulation allows attorney fees to be bundled with title examinations and title searches, while the federal court could determine that they cannot be charged.  Thus, the potential for inconsistent interpretations of the regulation exists with respect to the same VA refinance loans, supporting the substantiality of the federal interest here.

---

*City of Huntsville v. City of Madison*, 24 F.3d 169 (11th Cir. 1994), the interpretation of the federal statute or federal regulation had no potential impact on the federal agency involved.  *See City of Huntsville*, 24 F.3d at 169 n.3 (noting that "resolution of the state contract claim will have no direct effect upon the TVA.").  Thus, the Court finds those cases to be distinguishable.

[6] The federal regulations provide the VA with administrative remedies to enforce the program's regulatory provisions and allow the VA to bring claims under the False Claims Act on behalf of the Government.  *See* 38 C.F.R. § 36.4340(k) (imposing requirements for lender certification and limiting the lender's civil penalty for a false certification); 38 C.F.R. § 36.4340(l) (providing procedures for assessing liability for a false certification); 38 C.F.R. § 36.4340(n) (providing additional remedies to the VA, including claims on behalf of the Government under the False Claims Act, 31 U.S.C. § 3732).

Plaintiffs rely heavily in their motion to remand on the fact that Congress did not expressly establish a statutory private cause of action for violations of 38 C.F.R. § 36.4313. They argue that the absence of a statutorily established federal cause of action demonstrates the federal issue is not sufficiently substantial for federal-question jurisdiction. Although the Eleventh Circuit has not directly answered this question, at least one district court has found that veteran borrowers do not have an express or implied cause of action for violations of 38 C.F.R. § 36.4313. *See Brown v. First Tenn. Bank Nat'l Ass'n*, 753 F. Supp. 2d 1249, 1263 (N.D. Ga. 2009) (finding 38 C.F.R. § 36.4313 does "not afford a private cause of action to veteran-borrowers"). For purposes of the pending motion to remand, the Court assumes that no express or implied separate cause of action exists for the violation of the regulations in question. The Court also acknowledges that the absence of a federal cause of action must be given "some consideration in the assessment of substantiality." *Grable*, 545 U.S. at 318. In *Grable*, however, the Supreme Court clarified that the Court's previous decision in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986) did not convert "a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317. Instead, the absence of a federal

16

private right of action is "evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that § 1331 requires." *Id.* at 318.  The Court finds that the other previously described factors supporting the finding of a substantial federal question outweigh the fact that Congress did not provide for a private statutory cause of action.

Based on the foregoing, the Court concludes that this action raises a disputed and substantial federal issue. Therefore, the Court shall exercise jurisdiction over it, unless the exercise of jurisdiction would impermissibly disturb the appropriate balance to be maintained between federal and state judicial responsibilities.

**III. Can the Court Entertain the Claim Without Disturbing Any Congressionally Approved Balance of Federal and State Judicial Responsibilities?**

As explained by the Supreme Court, "even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto." *Grable*, 545 U.S. at 313.  "[T]he federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 313-14.

Plaintiffs argue that Congress has expressed its intent by deciding not to create a statutory cause of action for violation

of the VA regulations.  As previously explained, the lack of a federal cause of action for Plaintiffs' claims is relevant to, but not dispositive of, the question of whether the Court can exercise jurisdiction.  While the Court acknowledges that the lack of a federal cause of action is an important clue into Congress's conception of the scope of the Court's jurisdiction under § 1331, the Court does not think that entertaining Plaintiffs' claims will "herald[] a potentially enormous shift of traditionally state cases into federal courts."  *Id.* at 319. The Court's ruling today does not open the federal door to all breach of contract claims that raise an issue of federal law. This ruling is limited to those claims that involve genuinely disputed and potentially dispositive issues of federal law, the resolution of which requires the interpretation of federal regulations that comprise a complex regulatory scheme that in part is designed to protect the federal government which is the ultimate guarantor of the contracts in question.  The Court finds the exercise of federal jurisdiction under the unique circumstances presented here is sufficiently limited to avoid the disruption of the appropriate balance between federal and state judicial responsibilities.

The Court concludes that Plaintiffs' claims necessarily raise a disputed and substantial issue of federal law, which the Court can entertain without upsetting the balance between state

and federal judicial responsibilities.   Accordingly, the Court has subject matter jurisdiction over Plaintiffs' claims, and Plaintiffs' motion to remand is denied.

CONCLUSION

Based on the foregoing, Plaintiffs' Motion to Remand (ECF No. 7) is denied.

IT IS SO ORDERED, this 13th day of March, 2012.

S/Clay D. Land
_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE